Argued and submitted December 10, 2013, reversed in part and remanded;
otherwise affirmed January 23, 2014

James ROOT
and Valerie Root,
*Petitioners,*

*v.*

KLAMATH COUNTY
and JWTR, LLC,
*Respondents.*

Land Use Board of Appeals
2013008; A155037

320 P3d 631

Gregory S. Hathaway argued the cause for petitioners. With him on the brief were E. Michael Connors and Hathaway Koback Connors LLP.

Seth J. King argued the cause for respondent JWTR, LLC. With him on the brief were Michael C. Robinson and Perkins Coie LLP.

No appearance for respondent Klamath County.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Lagesen, Judge.

LAGESEN, J.

**LAGESEN, J.**

Petitioners seek judicial review of a final order of the Land Use Board of Appeals (LUBA) affirming an amendment by Klamath County to its comprehensive plan and zoning maps. The amendment added approximately 68,302 acres owned by intervenor-respondent JWTR, LLC to the county's Destination Resort Overlay (DRO) map of eligible lands. We affirm in part and reverse and remand in part.

## I. BACKGROUND

The facts pertinent to our review are not disputed. JWTR owns land in Klamath County for which it seeks approval for the siting of a destination resort under ORS 197.435 to 197.467. To that end, JWTR applied to Klamath County for an amendment to the county's comprehensive plan and zoning maps. JWTR requested that the maps be amended to add 90,000 acres owned by JWTR to the county's DRO map of eligible lands. The county amended the maps in the manner requested. Petitioners, among others, appealed to LUBA.

On appeal, in *Root v. Klamath County*, 63 Or LUBA 230 (2011) (*Root I*), LUBA concluded that the county's action was deficient in several respects and remanded to the county to address the identified deficiencies. Pertinent to the issues raised in this proceeding, LUBA concluded that the county was required to more thoroughly analyze whether any "tract" proposed to be included in the DRO map contained lands ineligible for destination resort siting under ORS 197.455(1)(e)[1] and, if so, whether ORS 197.435(7)[2] required exclusion of

---

[1] ORS 197.455(1)(e) provides, in relevant part:

"(1) A destination resort may be sited only on lands mapped as eligible for destination resort siting by the affected county. The county may not allow destination resorts approved pursuant to ORS 197.435 to 197.467 to be sited in any of the following areas:

"* * * * *

"(e) In an especially sensitive big game habitat area[.]"

[2] ORS 197.435(7) provides:

"'Tract' means a lot or parcel or more than one contiguous lot or parcel in a single ownership. A tract may include property that is not included in the proposed site for a destination resort *if the property to be excluded is on the boundary of the tract and constitutes less than 30 percent of the total tract.*"

(Emphasis added.)

the tract from the DRO map. *Root I*, 63 Or LUBA at 236-38. LUBA also concluded that the county's Goal 5 analysis was deficient because (a) its findings failed to adequately account for the fact that "there [was] an inventoried Goal 5 resource, especially sensitive big game habitat, located on or near some of the proposed lands"; and (b) the county failed to adequately analyze potential "conflicts with inventoried Goal 5 resources off-site from the proposed lands." *Id.* at 247-48. Finally, LUBA concluded that the county erred by deferring the assessment of whether the plan amendment complied with the Transportation Planning Rule, OAR 660-012-0060, until after approval of the amendment, contrary to *Willamette Oaks, LLC v. City of Eugene*, 232 Or App 29, 36, 220 P3d 445 (2009). *Root I*, 63 Or LUBA at 249-55.

On remand, JWTR again applied to the county for an amendment to the comprehensive plan and zoning maps, this time requesting that approximately 68,302 acres owned by JWTR be added to the DRO map of eligible lands. To demonstrate that the proposal did not contain any "tracts" required to be excluded from the DRO map, JWTR submitted a letter from its expert, Andréa Rabe. Rabe explained that she had reviewed the proposed amendment to the DRO map against the "land ownership layer for Klamath County" to identify "ownership tracts." After identifying tracts, she excluded from the proposed amended map any tracts that did not meet the statutory requirements for inclusion on the DRO map. She then prepared a map and a tract list reflecting those changes to the map originally proposed by JWTR. Rabe explained that she "included tracts in the Proposed Amended Destination Resort Overlay that in [her] professional opinion, satisfy the requirement in ORS 197.435(7) that any property excluded from a tract be located on the boundary of the tract and constitute[] less than 30% of the total tract." Based on Rabe's report, the county found that the tract list and map for the proposed amended DRO map of eligible lands only included tracts satisfying the requirements of ORS 197.435(7).

To address LUBA's concern that the proposed amended DRO map would affect the inventoried Goal 5 resource of especially sensitive big game habitat, the county

excluded from the proposed map approximately 10,000 acres to avoid conflict with the inventoried Goal 5 resource of Big Game Winter Range (BGWR) habitat. JWTR's expert, Rabe, opined that, as a result of the exclusion of those lands, there was no overlap between the proposed amended DRO map and any BGWR habitat and, thus, no on-site conflict between the proposed amendment and BGWR habitat. Based on the changes and Rabe's opinion, the county found that the proposed amendment did not affect any on-site Goal 5 resources. The county also conducted a more extensive analysis of the potential impact of the overlay on off-site inventoried Goal 5 resources. It ultimately concluded that its existing Goal 5 management program would "continue to be adequate" to protect off-site BGWR habitat.

Finally, to address compliance with the Transportation Planning Rule, the county adopted the following condition:

"This decision is final for purposes of appeal but shall not be effective for purposes of amending the Klamath County Comprehensive Plan Map and the Klamath County Land Development Code Map to add approximately 68,302 acres to the Plan and zoning maps until such time as the County imposes the Limited Use ('LU') Overlay zoning district zone to those same properties in a post-acknowledgment Plan amendment proceeding and provides in that post-acknowledgment Plan amendment proceeding [th]at the LU Overlay zoning district shall not allow any new uses allowed by the destination resort overlay designation until such time as the LU is removed in a subsequent post-acknowledgment Plan amendment proceeding that demonstrates compliance with then-applicable provisions of the [Transportation Planning Rule]. The effect of this condition is that no new uses are allowed by this decision and, therefore, as a matter of law pursuant to OAR 660-012-0060(1), this decision does not significantly affect any transportation facility."

Based on that condition, the county found that the proposed amendment did not significantly affect any transportation facility and, therefore, satisfied the Transportation Planning Rule:

"Based on the above, the Board finds that this Application is not a plan amendment that allows uses potentially

inconsistent with the capacity of transportation facilities because it does not authorize new land uses and, therefore, as a matter of law, does not significantly affect any transportation facility because of the condition of approval based on OAR 660-012-0060(2)(e). For these reasons, the Board finds that the [Transportation Planning Rule] remand issue has been satisfied."

Petitioners again appealed to LUBA. LUBA affirmed. *Root v. Klamath County,* ___ Or LUBA ___ (LUBA No 2013-008, Aug 9, 2013) (*Root II*). Petitioners timely sought review in this court. Before this court, petitioners argue that LUBA erred in three respects: (a) by concluding that JWTR's expert's opinion constituted substantial evidence supporting the finding that the tracts included in the amended DRO map satisfied the requirements of ORS 197.435(7) and ORS 197.455(1)(e); (b) by concluding that "there were no conflicts between inventoried Goal 5 resources and proposed destination resort lands" and by "improperly shifting the burden of proof to Petitioners to demonstrate there were no conflicts between inventoried Statewide Goal 5 resources and proposed destination resort lands"; and (c) by rejecting on ripeness grounds petitioners' claim that the county erred by determining that the amendment, as conditioned, complied with the Transportation Planning Rule.

## II.  STANDARD OF REVIEW

We generally review a LUBA order to determine whether it is "unlawful in substance or procedure[.]" ORS 197.850(9)(a). We elaborate further on that standard of review as needed in addressing petitioners' specific assignments of error.

## III.  ANALYSIS

### A.  *Substantial Evidence*

In the first assignment of error, petitioners assert that LUBA erred in its substantial-evidence review of the county's finding that JWTR's lands satisfy the requirements under ORS 197.435(7) and ORS 197.455(1)(e) for inclusion on the DRO map of eligible lands. In particular, petitioners contend that the only evidence in the record on that point—Rabe's letter opinion—lacks sufficient detail and information

about Rabe's qualifications to permit a reasonable person to rely on it, and that, as a result, there is no evidence in the record to support the county's determination that tracts included on the DRO map comply with ORS 197.435(7) and ORS 197.455(1)(e). Our standard of review compels us to reject that contention.

As we have explained, "[o]ur role in this circumstance is to ensure that LUBA has followed the proper 'substantial evidence' standard in reviewing" the county's decision. *Gunderson, LLC v. City of Portland*, 243 Or App 612, 636, 259 P3d 1007 (2011), *aff'd on other grounds*, 352 Or 648, 290 P3d 803 (2012) (some internal quotation marks omitted). "Our task is not to assess whether the local government erred in making a finding, but to determine whether LUBA properly exercised its review authority." *Citizens for Responsibility v. Lane County*, 218 Or App 339, 345, 180 P3d 35 (2008). If LUBA correctly articulates its standard of review, we cannot reverse LUBA's decision unless "there is no evidence to support the finding or if the evidence in the case is 'so at odds with LUBA's evaluation that a reviewing court could infer that LUBA had misunderstood or misapplied its scope of review.'" *Id.* (quoting *Younger v. City of Portland*, 305 Or 346, 359, 752 P2d 262 (1988)).

Here, LUBA's order reflects that it understood its role on substantial-evidence review. LUBA correctly explained that its task was to assess whether the evidence in the record would permit a reasonable person "to conclude that the properties included on the map are made up of tracts that include no ineligible lands or comply with the 30 percent rule[.]" *Root II*, ___ Or LUBA ___ (slip op at 6). LUBA then concluded that Rabe's report constituted substantial evidence supporting the county's finding "that the proposed map includes only 'tracts' that qualify for inclusion under ORS 197.435(7)." *Id.* LUBA noted that Rabe's description of her methodology for determining whether the tracts on the map satisfied ORS 197.435(7) made it reasonable for the county to credit her opinion, particularly in view of petitioners' failure to identify any countervailing evidence in the record.[3] *Id.* at 4-6. Although petitioners argue that

---

[3] Petitioners argue that "LUBA improperly shifted the burden of proof" to them when it stated that petitioners had not identified any evidence in the record

the absence of information about Rabe's qualifications, and the conclusory nature of Rabe's opinion, made it unreasonable for the county to credit Rabe's report, those arguments attack the weight to be assigned to the report by the fact-finder, something that is outside our—and LUBA's—scope of review. *Tigard Sand and Gravel, Inc. v. Clackamas County,* 151 Or App 16, 20, 949 P2d 1225 (1997), *rev den,* 327 Or 83 (1998) ("[S]ubstantial evidence review does not entail or permit the reviewing tribunal to reweigh or to assess the credibility of the evidence that was presented to the fact-finding body."). Regardless, under the circumstances, Rabe's description of her methodology provides a sufficient indicator of the report's reliability that we cannot say that LUBA's conclusion that the report constituted substantial evidence supporting the county's finding reflects a misunderstanding of substantial-evidence review.

Moreover, this is not a case where "no evidence" supports the county's finding. Rabe's report, if credited, is direct evidence of the fact that the property proposed for inclusion on the DRO map meets the requirements of ORS 197.435(7). This also is not a case where the evidence in the record is "so at odds" with the county's finding that we can infer that LUBA misunderstood or misapplied its standard of review. As noted, Rabe's report, the only evidence in the record addressing the point, supports the county's finding. Accordingly, we affirm on the first assignment of error.

B. *Goal 5*

In the second assignment of error, petitioners assert that "LUBA erred in determining there were no conflicts between inventoried Goal 5 resources and proposed destination resort lands when there is no evidence in the record supporting the determination." We reject that argument because it does not address LUBA's actual ruling on the Goal 5 issue that petitioners presented to LUBA. LUBA's order reflects that it did not, in fact, review the county's Goal 5

---

contradicting Rabe's opinion. We disagree. As we previously noted when rejecting a similar argument, "[b]y observing that petitioner presented no evidence that weighed against that finding, LUBA was not shifting the burden; it was observing that respondents presented the administrative equivalent of a *prima facie* case and nothing in the record rebutted it." *Devin Oil Co., Inc. v. Morrow County,* 236 Or App 164, 169, 235 P3d 705 (2010).

determination on the merits, or otherwise make any determination regarding conflicts between inventoried Goal 5 resources and the lands to be added to the DRO map. Instead, LUBA rejected petitioners' attack on the county's Goal 5 analysis for the procedural reason that petitioners failed to "identify any inventoried Goal 5 resource that the proposed post-acknowledgment plan amendment 'would affect[,]'" as required by OAR 660-023-0250(3). *Root II*, ___ Or LUBA ___ (slip op at 11). Consequently, because petitioners' merits argument does not challenge the ruling actually made by LUBA, it does not provide a basis for this court to conclude that LUBA's order is unlawful in substance or procedure.

Petitioners also assert that LUBA "erred in improperly shifting the burden of proof to Petitioners to demonstrate there were no conflicts between inventoried Statewide Goal 5 resources and proposed destination resort lands." In particular, petitioners claim that, by requiring them to identify a specific Goal 5 resource that is affected by the amendment to the DRO map, LUBA improperly shifted the burden of proving Goal 5 compliance from JWTR to petitioners. That argument—unlike petitioners' first argument—addresses the basis for LUBA's denial of their Goal 5 assignment of error. However, we nonetheless reject it. LUBA's longstanding procedural requirement[4] that a party challenging a local government's Goal 5 analysis must identify the particular Goal 5 resource or resources alleged to be affected by the local government's action does not shift any burden of proof. Rather, it simply requires the challenging party to focus the dispute before LUBA on those specific resources that may be affected by the local governmental action, so that LUBA can assess whether the local government conducted whatever Goal 5 analysis was required under the circumstances.

In that regard, we note that LUBA's requirement is consistent with OAR 660-023-0250(3), the Land Conservation and Development Commission (LCDC) rule governing Goal 5 analysis in conjunction with a post-acknowledgment plan amendment (PAPA) (the type of action

---

[4] *See, e.g., Marine Street LLC v. City of Astoria*, 37 Or LUBA 587, 619 (2000) (declining to consider Goal 5 arguments where party did "not allege that any inventoried Goal 5 resources are affected by the challenged decision").

at issue in this proceeding).[5] That rule provides that, absent circumstances not present here, a local government is not required to apply Goal 5 when adopting a PAPA unless the PAPA would affect a Goal 5 resource. OAR 660-023-0250(3). In other words, under the terms of the rule, absent an allegation that a specific inventoried Goal 5 resource would be affected by a particular PAPA, Goal 5 is not implicated by the PAPA process. LUBA's procedural practice implements the LCDC rule by requiring a party challenging a PAPA before LUBA to allege specific facts demonstrating that Goal 5 is triggered by the local government's action. That does not constitute a shift in the burden of proof. We therefore affirm on the second assignment of error.

## C.  *Transportation Planning Rule*

In the third assignment of error, petitioners assert that LUBA erred when it rejected their challenge to the county's determination that the proposed DRO map satisfied the Transportation Planning Rule as premature. We agree.

In amending its comprehensive plan and zoning maps to add JWTR's lands to the DRO map of eligible lands, the county made a final determination that the plan amendment "does not significantly affect any transportation facility." The county based that determination on the condition preventing the plan amendment from taking effect until after the county had adopted a limited use overlay prohibiting the use of the lands added to the DRO map for destination-resort purposes until a demonstration of full compliance with the Transportation Planning Rule.

---

[5] OAR 660-023-0250(3) provides:

"Local governments are not required to apply Goal 5 in consideration of a PAPA unless the PAPA affects a Goal 5 resource. For purposes of this section, a PAPA would affect a Goal 5 resource only if:

"(a) The PAPA creates or amends a resource list or a portion of an acknowledged plan or land use regulation adopted in order to protect a significant Goal 5 resource or to address specific requirements of Goal 5;

"(b) The PAPA allows new uses that could be conflicting uses with a particular significant Goal 5 resource site on an acknowledged resource list; or

"(c) The PAPA amends an acknowledged [urban growth boundary (UGB)] and factual information is submitted demonstrating that a resource site, or the impact areas of such a site, is included in the amended UGB area."

Petitioners' theory before LUBA was that the condition is unlawful, and that, as a result, the county erred when it relied on that condition to determine that the amendment would not significantly affect a transportation facility.

Contrary to LUBA's conclusion, there was nothing "premature" about petitioners' challenge to the county's determination that the amendment to the maps would not significantly affect a transportation facility. Although we acknowledge LUBA's concern about evaluating a claim where, as here, a local government's plan amendment might never take effect, that is the inevitable consequence of the interplay between (a) the statute governing LUBA's review of a local government's plan amendment, and (b) a local government's decision to make the effective date of a plan amendment contingent on some future event which may or may not transpire.

ORS 197.830 requires a party that desires review of a local government's final decision on a plan amendment to do so within 21 days of the date that the decision becomes final,[6] and further requires LUBA to issue its decision on review within 77 days of the date of transmittal of the record. ORS 197.830(9), (14).[7] Those statutory timelines generally do not permit LUBA to wait and see whether a

---

[6] Neither party asserts that the county's decision is not "final" within the meaning of ORS 197.830(9) as a result of the county's decision to condition the effectiveness of the amendment on the county's subsequent adoption of a limited use overlay. In any event, the county's decision, by its terms, states that it is "final for purposes of appeal," notwithstanding its delayed effectiveness, and nothing else in the decision suggests that the county views its approval of the amendment to the DRO map of eligible lands as non-final.

[7] ORS 197.830(9) states, in relevant part:

"A notice of intent to appeal a land use decision or limited land use decision shall be filed not later than 21 days after the date the decision sought to be reviewed becomes final. A notice of intent to appeal plan and land use regulation amendments processed pursuant to ORS 197.610 to 197.625 shall be filed not later than 21 days after notice of the decision sought to be reviewed is mailed or otherwise submitted to parties entitled to notice under ORS 197.615."

ORS 197.830(14) states:

"The board shall issue a final order within 77 days after the date of transmittal of the record. If the order is not issued within 77 days the applicant may apply in Marion County or the circuit court of the county where the application was filed for a writ of mandamus to compel the board to issue a final order."

final but conditionally effective plan amendment will, in fact, take effect, before reviewing a timely initiated appeal of the amendment. Accordingly, we reverse and remand to LUBA to address the merits of petitioners' contention that the county erred when it determined that the amendment to the maps would not significantly affect a transportation facility. *See Recovery House VI v. City of Eugene,* 150 Or App 382, 389-90, 946 P2d 342 (1997) (remanding to LUBA under similar circumstances).

## IV. CONCLUSION

LUBA correctly applied the substantial-evidence standard in reviewing the county's decision, and did not err by rejecting on procedural grounds petitioners' challenge to the county's Goal 5 analysis. We therefore affirm LUBA's order in those regards. However, LUBA erred when it rejected as "premature" petitioners' challenge to the county's determination that the map amendments will not significantly affect a transportation facility; we therefore reverse on that issue and remand to LUBA to consider it on the merits.

Reversed in part and remanded; otherwise affirmed.