Argued and submitted August 16, affirmed September 28, petition for review denied December 29, 2022 (370 Or 694)

Annunziata GOULD,
*Petitioner,*
*and*

Paul J. LIPSCOMB,
*Petitioner below,*

*v.*

DESCHUTES COUNTY
and Central Land and Cattle Company, LLC,
*Respondents.*

Land Use Board of Appeals
2022013; A178949

518 P3d 978

Petitioner challenges LUBA's order affirming Deschutes County's approval of a site plan application for 80 overnight lodging units (OLUs), as part of Phase A-1 of the development of a proposed resort, contending that LUBA erred in affirming the county's interpretation of conditions in a final master plan for development of the resort and in its own interpretation of those conditions. *Held*: In reviewing LUBA's order for whether it is unlawful in substance or procedure or whether it has properly applied the substantial evidence standard in its review of the county's order, ORS 197.850(9), the Court of Appeals affirmed LUBA. Most of the issues raised by petitioner on judicial review, which concern the county's and LUBA's interpretation of conditions for approval as set forth in a final master plan for development of the resort, either are not preserved and therefore will not be considered or have largely been considered and rejected in earlier litigation through LUBA orders affirmed on judicial review and have thus become the law of the case and are no longer subject to challenge. The court concluded, further, that LUBA did not err in its application of the substantial evidence standard or in its own interpretation of one of the conditions for approval.

Affirmed.

Jennifer M. Bragar and Jeffrey L. Kleinman argued the cause for petitioner. Also on the brief was Tomasi Bragar Dubay.

J. Kenneth Katzaroff argued the cause for respondent Central Land and Cattle Company, LLC. Also on the brief was Schwabe, Williamson & Wyatt, P.C.

No appearance for respondent Deschutes County.

Before Tookey, Presiding Judge, and Lagesen, Chief Judge, and James, Judge.

TOOKEY, P. J.

Affirmed.

**TOOKEY, P. J.**

This petition for judicial review is the most recent in a series of challenges to the proposed development of Thornburgh Destination Resort on 1,970 acres of land in Deschutes County that are zoned for exclusive farm use and mapped within a destination resort overlay zone. The property was formerly used as a ranch and is surrounded by public lands. We have considered many challenges raised by petitioner over the years since the development of the resort has been pursued. In this current proceeding, petitioner challenges LUBA's order affirming Deschutes County's approval of a site plan application for 80 overnight lodging units (OLUs), as part of Phase A-1 of the proposed resort. As we explain here, the issues raised by petitioner on judicial review, which concern the county's interpretation of conditions in a final master plan for development of the resort, either are not preserved and therefore will not be considered or have largely been resolved in earlier litigation through LUBA orders affirmed on judicial review and have thus become the law of the case and are no longer subject to challenge. We reject petitioner's remaining argument for the reasons explained herein.

Under Statewide Planning Goal 8 (recreational needs), ORS 197.445, a destination resort is a "self-contained development providing visitor-oriented accommodations and developed recreational facilities in a setting with high natural amenities." Local governments may plan for the siting of destination resorts on rural lands, subject to the provisions of state law. Goal 8; ORS 197.435 to 197.467.

Deschutes County provides for the development of destination resorts by a three-step approval process described in Deschutes County Code (DCC) 18.113.040.[1] In step one, a Conceptual Master Plan (CMP) for the resort is

_____

[1] DCC 18.113.040 provides:

"The authorization of a permit for a destination resort shall consist of three steps.

"A. Conceptual Master Plan and Conditional Use Permit for Destination Resort. A conceptual master plan (CMP) shall be submitted which addresses all requirements established in DCC 18.113.040. The CMP application shall be processed as if it were a conditional use permit under DCC Title 22, shall be subject to DCC 18.128.010, 18.128.020 and 18.128.030 and shall be

processed for approval as though it were a conditional use permit. DCC 18.113.040(A). The second step is approval of a Final Master Plan (FMP). DCC 18.113.040(B). In 2008, the county approved an FMP for the Thornburgh Destination Resort, and that approval has been upheld on judicial review. *Gould v. Deschutes County*, 59 Or LUBA 435 (2009), *affd*, 233 Or App 623, 227 P3d 758 (2010) (affirming the FMP).

The final step of the three-step review process is a land division or site-plan review. DCC 18.113.040(C). In addition to finding that it satisfies the site-plan-review criteria in DCC 18.124 or the subdivision criteria in DCC Title 17, the county must find at the third stage of review that the specific development proposal complies with the standards and criteria of DCC 18.113 and the FMP. DCC 18.113.040(C). The challenges on this judicial review relate to the county's approval of that final step, and the dispute concerns Thornburgh's compliance with two FMP conditions relating to water rights and "mitigation" of harm to fish, as described below.

DCC 18.113.070(D) requires, for the development of a destination resort, that "[a]ny negative impact on fish and wildlife resources will be completely mitigated so that there is no net loss or net degradation of the resource." LUBA has referred to that standard as the "no net loss" standard. Thornburgh has obtained Water Right Permit G-17036, which allows it to drill six wells in the Deschutes

---

reviewed for compliance with the standards and criteria set forth in DCC 18.113.

"B. Final Master Plan. The applicant shall prepare a final master plan (FMP) which incorporates all requirements of the County approval for the CMP. The Planning Director shall review the FMP to determine if it complies with the approved CMP and all conditions of approval of the conditional use permit. The Planning Director shall have the authority to approve, deny or return the FMP to the applicant for additional information. When interpretations of the Planning Director involve issues which are discretionary, the FMP approval shall be treated as a land use permit in accordance with DCC Title 22.

"C. Site Plan Review. Each element or development phase of the destination resort must receive additional approval through the required site plan review (DCC 18.124) or subdivision process (DCC Title 17). In addition to findings satisfying the site plan or subdivision criteria, findings shall be made that the specific development proposal complies with the standards and criteria of DCC 18.113 and the FMP."

Basin regional aquifer for consumption on the resort development, and which is anticipated to have a negative impact on stream flows; thus, the permit also requires Thornburgh to provide 1,356 total acre feet of "mitigation" water from instream sources.

The Thornburgh FMP provides for phased development and includes approval of a fish and wildlife habitat mitigation plan (FWMP) to satisfy the "no net loss" standard and to offset development impacts through mitigation of harm to fish and wildlife habitats. The FWMP contains two components: The first addresses terrestrial wildlife. The second component addresses off-site fish habitat. It requires Thornburgh to secure water rights for fish and wildlife habitat mitigation from Big Falls Ranch and the Central Oregon Irrigation District (COID). Thornburgh has acquired both of those water rights. It also requires removal of an existing instream irrigation pond in connection with the transfer of Big Falls water rights and elimination of exempt wells and funding for thermal modeling on Whychus Creek. The FWMP states as "background" that "the proposed source of water for the Resort is ground water [pumped from wells on the Thornburgh property], to be appropriated under a water right approved by the Oregon Water Resources Department." The FWMP relies on the OWRD Deschutes Basin mitigation program as a mitigation measure to replace stream flows affected by the use of ground water but discloses that the program "is necessarily based on estimates of impact and modeling." FMP Condition 38 requires Thornburgh to "abide by" the FWMP—which requires mitigation "in advance of water use"—and to provide annual reporting.[2]

The FMP divides the development into seven phases. Phase A includes development of transportation

_____

[2] FMP Condition 38 provides:

"[Thornburgh] shall abide by the April 2008 Wildlife Mitigation Plan, the August 2008 Supplement, and agreements with the BLM and ODFW for management of offsite mitigation efforts. Consistent with the plan, [Thornburgh] shall submit an annual report to the county detailing mitigation activities that have occurred over the previous year. The mitigation measures include removal of existing wells on the subject property, and coordination with ODFW to model stream temperatures in Whychus Creek."

The FWMP requires that water rights will be protected as instream flow rights and will be transferred instream "before water use may begin for that phase."

infrastructure, a golf course, a restaurant, meeting facilities, open space, 300 residential units, and 150 OLUs, and implementation of the FWMP. In May 2018, Thornburgh sought approval of a tentative plan for a portion of the approved Phase A, calling the partial subphase "Phase A-1," which includes a tentative subdivision plat for single-family residential dwelling lots and OLU lots, together with roads, utility facilities, lots, and tracts for future resort facilities and open space. Thornburgh also applied for site-plan review for a well, well house, pump house, reservoir, and sewage disposal. LUBA referred to the proposals, collectively, as the Phase A-l TP. The county hearings officer approved the application with conditions.

On petitioner Gould's appeal, LUBA remanded the county's order, based on the determination that Condition 17 of the approval violated the right to a public hearing on whether the no-net-loss standard would be satisfied for Phase A by mitigation from water sources not specified in the FWMP. *Gould v. Deschutes County*, 79 Or LUBA 561 (2019) (*Gould VIII*), *aff'd without opinion*, 310 Or App 868, 484 P3d 1073 (2021). On remand, the hearings officer again approved the Phase A-l TP application, this time without Condition 17. Petitioner appealed; LUBA issued an order affirming the county's approval. Gould's petition and the county's cross-petition for judicial review of LUBA's order are currently pending. *Gould v. Deschutes County* (A178963).

In the meantime, Thornburgh applied for site-plan review for 80 OLUs, to be developed on 8.43 acres as part of Phase A (the OLU site plan), which is the application at issue in this petition. The county's hearings officer approved the OLU site plan with conditions. Petitioner appealed to the Deschutes Board of County Commissioners, which chose not to the hear the appeal, thus making the hearings officer's order the county's final decision. DCC 22.32.035. Petitioner then appealed to LUBA.

Petitioner argued before LUBA that, in approving the OLU site plan, the hearings officer misinterpreted the applicable law and failed to make adequate findings supported by substantial evidence. Petitioner argued that the approval violated FMP Conditions 10 and 38 and TP

Condition 17. Petitioner's arguments before LUBA—and on judicial review—are largely premised on her contention, which LUBA has previously rejected, that, because water right Permit G-17036 is subject to a pending challenge,[3] it cannot form the basis for Thornburgh's satisfaction of the conditions' requirements.

LUBA rejected each contention. As relevant here,[4] LUBA first addressed FMP Condition 10, which provides:

> "[Thornburgh] shall provide, at the time of tentative plat/site plan review for each individual phase of the resort development, updated documentation for the state water right permit and an accounting of the full amount of mitigation, as required under the water right, for that individual phase."

The parties agree that FMP Condition 10 must be satisfied at each site-plan review phase, including this current phase. Relying on previous LUBA orders relating to the resort development, the county had determined that FMP Condition 10 imposes a requirement for documentation of water rights and an accounting of the amount of required mitigation, and that Thornburgh had satisfied those documentation requirements. On appeal to LUBA, petitioner contended that, in light of evidence that Permit G-17036 is subject to challenge, and that Thornburgh is now seeking new water rights with potentially different impacts and necessitating different mitigation, FMP Condition 10 requires more than documentation—it requires that Thornburgh establish at each phase of site-plan review, including the current OLU site-plan review, that Thornburgh had acquired access to actual water required for the particular phase and also had completed mitigation.

LUBA agreed with the county's understanding of FMP Condition 10. LUBA explained that it had previously determined, in *Gould VIII*, that, because water mitigation is

---

[3] The pending challenge to water Permit G-17036 is based on alleged procedural defects, as described in LUBA's order in *Gould v. Deschutes County*, ___ Or LUBA ___ (LUBA No 2020-095, June 11, 2021) (*Gould Golf*), *aff'd without opinion*, 314 Or App 636, 494 P3d 357 (2021), *rev den*, 369 Or 211 (2022).

[4] Petitioner no longer challenges the county's decision relating to TP Condition 17.

based on "consumptive use," FMP Condition 10 is a primarily an informational requirement to provide *documentary* "proof of adequate water rights and mitigation commensurate with the estimated consumptive use of water for the development approved at each phase of development, and in advance of actual water consumption."

In rejecting petitioner's contention that Thornburgh had failed in its burden, LUBA explained that, in its previous order, LUBA had found that Thornburgh had established its water right under Permit G-17036, for a quasi-municipal use of groundwater, which authorized Thornburgh to drill six wells and pump groundwater for resort use, including a golf course and irrigation lakes. LUBA explained that it had previously determined that Thornburgh had met its burden with respect to proof of water rights by showing that, despite pending procedural challenges by petitioner, Permit G-17036 is not cancelled; thus, LUBA reasoned that it had concluded in *Gould VIII* that Thornburgh had met the documentation requirement of FMP Condition 10 pertaining to water rights. And LUBA had also determined that Thornburgh had provided sufficient documentation of mitigation. Finally, LUBA explained, in *Gould VIII*, which, as noted, we affirmed without opinion, LUBA had determined that Thornburgh had met the water permitting and mitigation requirements necessary to comply with FMP Condition 10. LUBA rejected petitioner's contention that evidence that Thornburgh was seeking water rights in addition to those provided by Permit G-17036 was evidence that Permit G-17036 was no longer sufficient to meet mitigation requirements and that new mitigation requirements must be satisfied for those potential new water rights. LUBA determined that, despite evidence that Thornburgh is also seeking out additional water rights, substantial evidence supported Thornburgh's assertion and the county's determination that Thornburgh was planning to rely on its existing Permit G-17036 and mitigation requirements for this phase of development. LUBA further noted that, in a separate order, *Gould v. Deschutes County*, ___ Or LUBA ___ (LUBA No 2020-095, June 11, 2021) (*Gould Golf*), *aff'd without opinion*, 314 Or App 636, 494 P3d 357 (2021), *rev den*, 369 Or 211 (2022), LUBA had adhered to its interpretation

of FMP Condition 10 in *Gould VIII* that the requirements of FMP Condition 10 were satisfied by the documentation provided by Thornburgh, including documentation of the continued existence of Permit G-17036 and the necessary accounting for mitigation showing estimates the amount of water needed for the golf course and Phase A-1 tentative plan. LUBA thus rejected petitioner's challenges relating to FMP Condition 10.

LUBA then turned its attention to petitioner's contentions relating to FMP Condition 38, which provides:

"[Thornburgh] shall abide by the April 2008 Wildlife Mitigation Plan, the August 2008 Supplement, and agreements with the BLM and ODFW for management of off-site mitigation efforts. Consistent with the plan, [Thornburgh] shall submit an annual report to the county detailing mitigation activities that have occurred over the previous year. The mitigation measures include removal of existing wells on the subject property, and coordination with ODFW to model stream temperatures in Whychus Creek."

The county had determined that FMP Condition 38 does not require Thornburgh to demonstrate any specific mitigation measures in place for approval of the OLU site plan, unless the site-plan application changes the FWMP; FMP Condition 38 simply imposes a requirement for annual reporting of mitigation activities. Because the site-plan application made no changes to the FWMP, the county concluded, there was no requirement to demonstrate any specific mitigation measures.

Before LUBA, petitioner contended that, in light of petitioner's challenge to Thornburgh's OLU site-plan application, the pending challenge to Permit G-17036 as a source of water for the development, and evidence presented by petitioner that actual water would not be available for the documented mitigation plan, FMP Condition 38 requires, in advance of site-plan approval, that Thornburgh show possession of water rights and the availability of actual water to satisfy mitigation requirements. Pre-approval compliance, petitioner contended, would be subject to a public evidentiary hearing in which petitioner could participate, DCC 18.113.070(D) (describing participatory rights of interested

persons). Petitioner contended that the county's failure to require Thornburgh to present that proof at the site-plan application phase deprived petitioner of the right to participate and "robs interested persons of a public hearing on the evidence of whether Thornburgh is abiding by the FWMP at the final stage of review."[5]

We note that the mitigation plan itself has been the subject of litigation in which petitioner has participated. *See Gould v. Deschutes County*, 233 Or App 623, 639-43, 227 P3d 758 (2010) (describing litigation). Here, LUBA agreed with petitioner that, even without FMP Condition 38, compliance with the FWMP was a continuous obligation of the resort development. But LUBA rejected petitioner's contentions regarding the function of FMP Condition 38 or that FMP Condition 10, FMP Condition 38, and the FWMP together required proof of fish habitat mitigation actions before approval of the site plan. Rather, LUBA reasoned, as it had previously held (in *Gould VIII*, which, as noted, we affirmed without opinion), that although the applicant must at all stages of development "abide by" the requirements of the FWMP, the FWMP itself does not impose an obligation at the time of site-plan approval to establish that instream mitigation has been completed, *i.e.*, that mitigation water has been placed instream. LUBA reasoned that FMP Condition 38 imposes a requirement for annual reporting to ensure compliance once water is being pumped for the development, and that, as LUBA had held in *Gould VIII*, the FWMP's requirement for mitigation "in advance of water use" does not impose a requirement for mitigation pre-development.[6] LUBA explained the holding of its order in *Gould VIII* that

"[t]he FWMP acknowledges that habitat impacts will not occur until development or groundwater pumping begins. While Thornburgh must provide the full amount of mitigation water for each phase 'in advance of water use,'

---

[5] Contrary to petitioner's contention on judicial review, petitioner did not contend before LUBA that only water right Permit G-17036 may be used to satisfy the requirements of the FWMP; to the extent that petitioner makes that argument now, we decline to address it.

[6] LUBA owed no deference to the county's interpretation of FMP Conditions 10 and 38; its role, instead, was to review for legal error—that is, for whether the city "[i]mproperly construed the applicable law" under ORS 197.835(9)(a)(D). *M & T Partners, Inc. v. Miller*, 302 Or App 159, 460 P3d 117 (2020).

the FWMP does not require proof of mitigation actions in advance of pumping. That is, the FWMP does not require proof of mitigation actions at the third-stage development application. Instead, FMP Condition 38 requires Thornburgh to act in accordance with the FWMP and to submit an annual report of mitigation actions. Presumably, the triggering event for that annual reporting requirement is actual resort development activity or water pumping. However, the FWMP does not require mitigation actions and reporting as a condition to site plan approval."

Then, in a separate analysis of the text and context of FMP Condition 38 and the FWMP, LUBA reaffirmed that FMP Condition 38 does not require proof of the current availability of water in the mitigation source—Deep Canyon Creek—as a precondition for site-plan approval.

On judicial review, in her first assignment, petitioner contends that LUBA has erred in affirming the county's interpretation of FMP Condition 38, "thereby violating Petitioner's and other interested person's rights to a public hearing on whether Thornburgh is abiding by the FWMP." Petitioner's argument is somewhat hard to discern but appears to depend again on the assumption, which LUBA has previously rejected, that the pending challenge to Permit G-17036 prevents reliance on that permit as a basis for satisfaction of FMP Condition 38. Petitioner contends that the requirement in FMP Condition 38 that the developer must "abide by" the FWMP means that Thornburgh must establish at the site-plan review phase—without reliance on Permit G-17036—that it can meet the water flow requirements of the FMP sufficient to meet the mitigation requirements and, further, that it must actually carry out the mitigation in advance of approval. Petitioner reasons:

> "The site plan stage is truly the final stage in the public review process and thus the only step in advance of water use where Thornburgh can show that it has the legally transferable water resources actually available and capable of being placed timely instream to mitigate the impacts of the water it will consume with that stage."

Thus, petitioner contends, Thornburgh must establish, at the site-plan review stage, that the necessary water is actually available under existing water rights, excluding

consideration of Permit G-17036. Petitioner contends in this assignment that the county's interpretation that FMP Condition 38 does not require this proof at the time of site-plan approval, together with its interpretation of FMP Condition 10 to require only paper documentation of water rights, deprived petitioner of her right to a public hearing and caused her substantial prejudice, the prejudice not otherwise described but presumably based on petitioner's inability to present evidence the conditions cannot be satis-fied because no water is available to fulfill them. Further, in petitioner's view, substantial evidence supports the finding that water will not be available.[7] In her second assignment of error, petitioner repeats some her challenges to LUBA's interpretation of FMP Conditions 10 and 38 and also asserts that LUBA erred in relying on rationale from an earlier order, *Bouman v. Jackson County*, 23 Or LUBA 628, 631-32 (1992), that petitioner asserts is not applicable in the pres-ent posture.

We review LUBA's order to determine whether it has properly applied the legal standards for its review of the county's order, *i.e.*, to determine whether LUBA's order is unlawful in substance or procedure or whether it has prop-erly applied the substantial evidence standard in its review of the county's order. ORS 197.850(9). "A LUBA order is unlawful in substance if it represents a mistaken interpre-tation of the applicable law." *Kine v. Deschutes County*, 313 Or App 370, 370-71, 496 P3d 1136 (2021) (internal quotation marks omitted). To the extent that petitioner challenges LUBA's determinations as to whether substantial evidence supports the county's decision under ORS 197.850(9)(c), the court reviews to assess whether LUBA correctly understood its role in conducting its review for substantial evidence. *Columbia Riverkeeper v. Columbia County*, 297 Or App 628,

---

[7] Again, as noted, petitioner's arguments appear to be based on the underly-ing assumption that water rights and mitigation requirements of the FWMP can only be satisfied through Permit G-17036. Petitioner argues that Permit G-17036 will not be sufficient to meet the requirements of the FWMP. We agree with Thornburgh that that issue was not presented to LUBA and therefore is not pre-served. We nonetheless agree with Thornburgh that, to the extent it is preserved, the argument is based on an erroneous premise. Thornburgh is correct that there is no requirement in the FWMP that the water rights and mitigation can only be satisfied through Permit G-17036.

640, 443 P3d 1184, *rev den*, 365 Or 721 (2019) (citing *Root v. Klamath County*, 260 Or App 665, 670, 320 P3d 631 (2014)). We address each of petitioner's challenges in turn, conclude that LUBA did not err, and therefore affirm.

Petitioner's arguments in her first assignment of error turn on LUBA's interpretations of both FMP Conditions 10 and 38, which we review as a matter of law. As noted, several of those interpretative issues have been decided in previous LUBA orders that have been affirmed on judicial review and that we therefore do not consider here. *Beck v. Tillamook*, 313 Or 148, 153, 831 P2d 678 (1992) (A party is not entitled to relitigate issues that have been resolved on review of previous phases of the same land use litigation). LUBA has previously held, in orders that we have affirmed without opinion, that the requirements of FMP Condition 10 were satisfied by the documentation provided by Thornburgh, including documentation of the continued existence of Permit G-17036 and mitigation data. *Gould VIII*; *Gould Golf*. Thus, we decline to consider petitioner's contention in her first assignment that Thornburgh has failed to show that it holds a valid water permit or that it has not presented sufficient data on mitigation. And we decline to consider petitioner's argument, resolved in previous litigation, that FMP Condition 10 requires proof, at this stage, of the availability of actual water behind Thornburgh's water right. Thus, all of petitioner's arguments relating to FMP Condition 10 have previously been rejected and we reject them here.

Most of petitioner's arguments in her first assignment of error relating to FMP Condition 38 have also been previously addressed and rejected by LUBA in earlier orders. Petitioner's primary argument is that the requirement in FMP Condition 38 that Thornburgh "abide by" "the April 2008 Wildlife Mitigation Plan, the August 2008 Supplement, and agreements with the BLM and ODFW for management of off-site mitigation efforts" means that petitioner must prove, at every approval stage, that it has fulfilled those requirements, which are set forth in the FWMP. LUBA noted in its order that "the plain meaning of 'abide by' is 'to act or behave in accordance with or obedience to (as a rule or promise) * * *: conform to.' *Webster's Third New Int'l Dictionary* (unabridged ed 2002). The opposite of

'conform to' is 'deviate from.'" (Omission LUBA's.) LUBA agreed with petitioner's contention that the requirement that Thornburgh abide by the requirements of the FWMP at every stage means that it must comply with the FWMP at every stage. But LUBA noted that it has held, in an order that we have affirmed without opinion on judicial review, *Gould VIII*, that neither the FWMP nor FMP Condition 38 requires pre-development mitigation, and that the requirement to "abide by" the FWMP in FMP Condition 38 is satisfied by the reports filed by Thornburgh that address the requirements of the FWMP. As interpreted by the county and affirmed by LUBA, compliance with FMP Condition 38 is measured by annual reporting filed after water use has begun. We are satisfied that, in light of the requirements of the FWMP, with which FMP Condition 38 requires compliance and which imposes no requirement for pre-development mitigation, LUBA's interpretation of FMP Condition 38 is correct as a matter of law. We therefore reject that portion of petitioner's first assignment of error.

To the extent that petitioner argues in her first assignment that LUBA erred in its application of the substantial evidence standard relating to compliance with FMP Condition 38, we also reject that argument. LUBA has correctly applied the substantial evidence standard.

The remaining contention raised by petitioner in her first assignment is that FMP Condition 38 should be read to provide for a public hearing on the applicant's compliance with mitigation. As noted, the conditions, as well as the mitigation plan itself, have been the subject of extensive litigation in which petitioner has participated. And, as LUBA correctly held, the text of FMP Condition 38 makes no provision for public review or hearing relating to the reporting and mitigation requirements associated with each stage of development as required by the FWMP. We therefore affirm LUBA's rejection of that contention.

Petitioner's second assignment of error again addresses LUBA's interpretation of FMP Conditions 10 and 38 and repeats many of the arguments that we have rejected in the first assignment. Petitioner additionally contends that LUBA's order erroneously relied on a rationale from

an earlier order, *Bouman*, in which LUBA has held that, at the preliminary review stage, to establish compliance with conditions for development, an approval of an application for development simply must be based on evidence that the applicant is not precluded from obtaining required state agency permits as a matter of law. Petitioner argues that LUBA's order is based on that rationale of *Bouman* and represents an unwarranted extension of that rationale to the site-plan-approval phase, which is the concluding approval phase before development. At the site-plan-approval phase, petitioner contends, it is not sufficient to establish that the applicant can feasibly satisfy conditions: conditions must actually be satisfied.

Petitioner's contention is again premised in part on her view that Permit G-17036 is cancelled and cannot form the basis for compliance with the conditions. As explained, that understanding has been rejected by LUBA orders that have been upheld on judicial review. But we reject petitioner's argument in her second assignment for the additional reason that, even assuming that LUBA's reliance on the analysis of *Bouman* at this current site-plan approval phase of development would be reviewable under our standard of review, *but see Central Oregon Landwatch v. Deschutes County*, 315 Or App 673, 680, 501 P3d 1121 (2021) (The petitioner provided "no basis under our standard of review that would permit us to displace LUBA's application of its own precedent."), it is not apparent to us that LUBA in fact relied on *Bouman*. LUBA did not cite *Bouman* in its current order under review or mention the rationale in its order. LUBA's order (and the orders on which it relied) analyzed the texts of FMP Conditions 10 and 38 and reached conclusions rejecting petitioner's proposed interpretations based on that analysis, as well as the conclusion that substantial evidence supported the county's determination that the conditions had been satisfied. We accordingly reject petitioner's second assignment.[8]

Affirmed.

_____

[8]  We reject petitioner's contention, in a memorandum of supplemental authority, that our recent opinion in *Golden Rule Farms v. Water Resource Dept.*, 321 Or App 43, 515 P3d 908 (2022), somehow supports its argument that the pendency of the challenge to Permit G-17036 has some bearing on Thornburgh's ability to satisfy FMP Conditions 10 and 38 or the interpretation of those provisions.