***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

Argued and submitted September 1, affirmed November 2, 2022, petition for
review denied March 30, 2023 (370 Or 827)

Annunziata GOULD,
*Petitioner
Cross-Respondent,*
*v.*
DESCHUTES COUNTY,
*Respondent
Cross-Petitioner.*

Land Use Board of Appeals
2021112; A178963

Jennifer M. Bragar argued the cause for petitioner-cross-respondent. Also on the briefs were Jeffrey L. Kleinman and Tomasi Bragar Dubay.

David Doyle filed the brief for respondent-cross-petitioner.

Before Ortega, Presiding Judge, and Powers, Judge, and Hellman, Judge.

ORTEGA, P. J.

Affirmed.

**ORTEGA, P. J.**

Petitioner seeks review of a Land Use Board of Appeals (LUBA) order that affirmed a Deschutes County decision, after a narrow remand from LUBA, to approve a tentative plan, site plan review, and site plan review application modification for phased development of a destination resort (Phase A-1 TP). In a cross-petition, the county seeks review of certain statements made by LUBA in that order. We review LUBA's order to determine if it is "unlawful in substance or procedure," ORS 197.850(9)(a). Petitioner's arguments in this review are largely foreclosed by our recent decision in *Gould v. Deschutes County*, 322 Or App 11, 518 P3d 978 (2022), in which petitioner raised the same arguments on review of a different LUBA order addressing another aspect of the Phase A-1 TP approval. We also reject petitioner's arguments to the extent that they raise new issues not decided in that case. On the county's cross-petition, we decline to address the county's arguments because they are directed at statements LUBA made in its order that were unnecessary to LUBA's decision. Accordingly, we affirm LUBA's order.

We set out only the background necessary to understand our decision here. Our recent opinion in *Gould*, 322 Or App at 13-20, provides fuller context and we do not repeat it here. This case is part of a series of challenges to the development of Thornburgh Destination Resort, which is proposed for development on 1,970 acres of farmland in Deschutes County that is zoned exclusive farm use and mapped within a destination resort overlay zone.[1] *Id.* at 13. The final master plan (FMP) for the resort provides for phased development and compliance with a fish and wildlife habitat mitigation plan (FWMP) to meet the "no net loss standard." *See Gould v. Deschutes County*, 59 Or LUBA 435 (2009), *aff'd*, 233 Or App 623, 227 P3d 758 (2010) (addressing the Thornburgh FMP). The no net loss standard is a county approval criterion for destination resort development that requires that "[a]ny negative impact on fish and wildlife resources will be completely mitigated so that there is no net

---

[1] For ease of reference, we, like LUBA, refer to the applicant in this case as Thornburgh.

loss or net degradation of the resource." Deschutes County Code (DCC) 18.113.070(D).[2] For fish habitat, the FWMP requires that Thornburgh secure water rights for mitigation from Big Falls Ranch and Central Oregon Irrigation District (COID). *Gould*, 322 Or App at 15. "The FWMP relies on the [Oregon Water Resources Department (OWRD)] Deschutes Basin mitigation program as a mitigation measure to replace stream flows affected by use of ground water but discloses that the program 'is necessarily based on estimates of impact and modeling.'" *Id.* Condition 38 in the FMP "requires Thornburgh to 'abide by' the FWMP—which requires mitigation 'in advance of water use'—and to provide annual reporting." *Id.*

In 2018, the county approved, with conditions, Thornburgh's tentative plan application for a portion of the first phase of the resort, Phase A-1 TP. One of the approval conditions was Condition 17, which provided:

"17.   Site design approval. Prior to issuance of building permits for the single-family dwellings, obtain design approval for at least 50 OLUs, which approval shall demonstrate that: (a) the OLUs qualify as such and (b) the Big [Falls] Ranch and COID water referenced in the Mitigation Plan and FMP decision have been secured, [or] demonstrate that the proposed alternate source is acceptable to [the Oregon Department of Fish and Wildlife (ODFW)] and provides the same quantity and quality mitigation so as not to constitute a substantial modification or justify a modification to the FMP."

Petitioner challenged the Phase A-1 TP approval, and, as relevant here, challenged Condition 17 as impermissibly allowing a modification of the FWMP without a public hearing. LUBA remanded the approval of the Phase A-1 TP to the county, and we affirmed without an opinion. *Gould v. Deschutes County*, 79 Or LUBA 561 (2019) (*Gould VIII*), *aff'd*, 310 Or App 868, 484 P3d 1073 (2021). LUBA's remand, however, was narrow. LUBA determined that Condition 17 violated the right to a public hearing "on whether the no

---

[2] DCC 18.113.070(D) provides: "In order to approve a destination resort, the Planning Director or Hearings Body shall find from substantial evidence in the record that *** [a]ny negative impact on fish and wildlife resources will be completely mitigated so that there is no net loss or net degradation of the resource."

net loss/degradation standard will be satisfied by mitigation from water sources not specified in the mitigation plan." *Id.* at 580. LUBA directed that

> "the county may not rely on TP Condition 17 to conclude that, as conditioned, the tentative plan approval will comply with the mitigation plan and thus satisfy the no net loss/degradation standard. On remand, the county must consider whether, without TP Condition 17, the tentative plan for Phase A-1 satisfies the no net loss/degradation standard and whether a change in the source of mitigation water constitutes a substantial change to the FMP approval, requiring a new application, modification of the application, or other further review consistent with FMP and DCC destination resort regulations."

*Id.*

On remand, the county again approved the tentative plan for Phase A-1 TP, but removed Condition 17 from the approvals, concluding that it was not needed for Thornburgh to comply with the FWMP. Thornburgh did not propose an alternate source of mitigation water and, instead, presented evidence that it had secured Big Falls Ranch water rights as the source of mitigation water for Phase A-1 TP, which is a source of water identified in the FWMP.

On review of the county's decision, LUBA framed the issue before it as whether the county "correctly concluded that the development proposed in the Phase A-1 TP complies with the FWMP." In a detailed opinion, LUBA rejected petitioner's arguments, which were premised on petitioner's assertions that Thornburgh had not demonstrated that the Big Falls Ranch water rights had been or will be transferred to an instream water right and that such a transfer would result in actual water flow in Deep Canyon Creek. Ultimately, LUBA's decision was based on its conclusion that Thornburgh was not required to show, at the tentative plan stage, that it had placed instream the mitigation water required by the FWMP or that the mitigation water "has been or will be transferred to an instream use." Relying on its decision in the related case, which we have affirmed, *Gould v. Deschutes County*, ___ Or LUBA ___ (LUBA No 2022-013, June 1, 2022), *aff'd*, 322 Or App 11, 518 P3d 978 (2022), LUBA explained that the FMWP

did not require proof of mitigation actions at the tentative plan stage in the development application. Instead, LUBA determined that "the FWMP requires Thornburgh to provide mitigation water instream 'before water use may begin' for development approved in Phase A-1 TP."

In her petition on judicial review of LUBA's order, petitioner raises several arguments, the majority of which we have rejected in the related case of *Gould*, 322 Or App at 21-25. However, petitioner raises two arguments in this case that may not have been fully addressed by our opinion in that case. First, petitioner argues that LUBA erred because it did not address the county's error in concluding that consideration of Conditions 10 and 38 in the FMP were beyond the scope of LUBA's remand to the county. We reject that argument because LUBA did address that issue when it stated that it would not reach the remaining miscellaneous issues raised by petitioner, which included that issue, because it was undeveloped for review. Petitioner does not argue that she did sufficiently develop that argument for review before LUBA, and we conclude that LUBA's determination was not unlawful in substance or procedure. Second, to the extent petitioner's challenge is based on an argument that the county's decision was not supported by substantial evidence, we reject it because LUBA correctly applied the substantial evidence standard in its review of the county's decision. *See Columbia Riverkeeper v. Columbia County*, 297 Or App 628, 640, 443 P3d 1184, *rev den*, 365 Or 721 (2019) (citing *Root v. Klamath County*, 260 Or App 665, 670, 320 P3d 631 (2014)) (explaining that our role is to assess whether LUBA correctly understood and applied its review for substantial evidence). In sum, we affirm LUBA's order on the petition.

Having resolved petitioner's arguments, we turn to the county's cross-petition. To recount the county's argument, we must first provide additional explanation of LUBA's order. In addressing petitioner's argument that the county's decision was not supported by substantial evidence because there is evidence that the Big Falls Ranch water rights will not result in actual surface water flow in Deep Canyon Creek, LUBA stated that, "[i]n the FWMP, Thornburgh

committed to providing actual mitigation in the form of wet water not simply paper water [rights]." LUBA continued,

> "Contrary to the county's argument, the FWMP does not rely solely on paper water. Instead the FWMP provides that the transfer of water rights will result in actual flowing water in the affected streams. \*\*\* We agree with petitioner that Thornburgh's purchase of water rights is not sufficient to satisfy the requirements of the FWMP, which requires actual wet water to satisfy the no net loss standard."

LUBA, however, based its affirmance of the county's decision on its conclusion that "the FWMP does not require Thornburgh to establish that wet water is actually in Deep Canyon Creek at the tentative plan stage. Instead, the FWMP requires Thornburgh to provide mitigation water instream 'before water use may begin' for development approved in Phase A-1 TP."

In its cross-petition, the county argues that LUBA erred in concluding that the FWMP requires "actual wet water" for mitigation. Specifically, the county challenges on review the following statements in LUBA's order:

> "[T]he FWMP provides that the transfer of water rights will result in actual flowing water in the affected streams";

> "Thornburgh's purchase of water rights is not sufficient to satisfy the requirements of the FWMP, which requires actual wet water to satisfy the no net loss standard"; and

> "The FMP hearings officer's conclusion that 'evidence regarding the location and volume of water rights is substantial evidence as to the likely location and volume of water in the identified streams' does not conclusively decide that the FWMP requires only paper water."

The county argues that LUBA erred because the FWMP does not require a showing that Thornburgh's mitigation effort will result in actual attainment of a particular volume of surface water flow; rather, according to the county, the mitigation required is the transfer of the Big Falls Ranch water rights to instream rights. Ultimately, the county requests that we affirm LUBA's order, but additionally requests that we correct LUBA's interpretation of the FWMP or remand

to LUBA with instructions to correct its interpretation of the FWMP.

We decline the county's invitation to interpret the precise contours of the mitigation requirement in the FWMP or to remand for LUBA to do so. However, we do reject the county's contention that, by its statements, LUBA inserted any type of specific streamflow measurement into the FWMP. That is not what LUBA said. Nonetheless, that entire discussion by LUBA was not necessary to its disposition of the petition. LUBA's decision, which we have affirmed, was based on its conclusion that Thornburgh was not required to show that the mitigation was accomplished at the tentative plan stage. That conclusion disposed of petitioner's arguments in her petition, which challenged the county's deletion of Condition 17 from the Phase A-1 TP approval. Any additional comment by LUBA on what the FWMP requires Thornburgh to show *in the future* to establish that it has met its mitigation requirement was unnecessary to LUBA's decision and is equally unnecessary to ours. *See, e.g.*, *Engweiler v. Persson*, 354 Or 549, 557-58, 316 P3d 264 (2013) ("When the court's prior construction [of a statute] is mere *dictum*, however, it has no such precedential effect. *** In judicial opinions, [*dictum*] commonly refers to a statement that is not necessary to the court's decision."); *see also Young v. Jackson County*, 58 Or LUBA 64, 69 (2008), *aff'd*, 227 Or App 290, 205 P3d 890 (2009) (treating *dictum* in a prior LUBA order as nonbinding). For that reason, we decline to interpret the FWMP or to remand to LUBA to do so, as requested by the county.

Affirmed.